UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO, EASTERN DIVISION

| | | |
|---|---|---|
| SCHWEBEL BAKING COMPANY, individually and on behalf of all those similarly situated, 965 East Midlothian Boulevard Youngstown, OH 44502 | : : : : : : | Case No. |
| Plaintiff, | : : | JURY TRIAL DEMANDED |
| v. | : : : | |
| FIRSTENERGY SOLUTIONS CORP., c/o CT Corporation System 4400 Easton Commons Way, Suite 125 Columbus, OH 43219 | : : : : : | |
| Defendant. | : | |

**CLASS ACTION COMPLAINT**

Plaintiff, Schwebel Baking Company ("Schwebel" or "Plaintiff"), individually and on behalf of all those similarly situated, upon personal knowledge as to the facts pertaining to Plaintiff and upon information and belief as to all other matters, based on investigation of its counsel against Defendant, FirstEnergy Solutions Corp. ("FES" or "Defendant"), states as follows:

## NATURE OF THE ACTION

1. This action seeks declaratory and injunctive relief and breach of contract damages against FES on behalf of Plaintiff, which purchased electricity from FES pursuant to a fixed-price electricity supply agreement, and a class of similarly situated business customers of Defendant that are located in the states of Ohio, Illinois, Michigan, Pennsylvania, Maryland, and New Jersey, who also purchased energy from Defendant FES pursuant to a fixed-price electricity supply agreement with FES substantially in the form attached hereto as Exhibit A (the "Fixed-Rate Agreement" or "Agreement"). The Fixed-Rate Agreement between Plaintiff and FES, and each Fixed-Rate Agreement between each Class Member and FES, covered the provision of electricity for the month of January 2014. The salient provisions of Exhibit A are identical in every single contract between FES, on the one hand, and each FES business customer (including Plaintiff and each Class Member), on the other hand.

2. The Fixed-Rate Agreement, Exhibit A, was drafted entirely by FES. Under its terms, FES agrees to supply its business customers with electricity during the course of the Agreement (the "Contract Period") at an agreed upon and fixed rate per kilowatt-hour that is specified in the Agreement, thereby allowing Plaintiff and every other Class Member to better anticipate and budget the costs of their electricity usage charges – and to hedge against the risk of increased electricity charges during the Contract Period. Only one provision of the Fixed-Rate Agreement allowed FES to potentially "pass through" an increase in electrical charges to its customers, but that paragraph permitted such "pass throughs" only in certain very limited circumstances. Specifically, ¶31 of the Fixed-Rate Agreement provides as follows:

**Effect of Regulatory Action**

> 31. If any regional transmission organization [RTO] or similar entity, Electric Utility, governmental entity or agency, NERC[1] and other industry reliability organization, or court requires a change to the terms of the Agreement, or imposes upon Supplier [*i.e.*, FES] new or additional charges or requirements, or a change in the method or procedure for determining charges or requirements, relating to the Electricity Supply under this Agreement (any of the foregoing, a "Pass-Through Event"), Customer agrees that Supplier may pass through to Customer the additional cost to Supplier of such Pass-Through Event, under the procedure specified in Paragraph 32 below. For purposes of this Paragraph 31, changes include, without limitation, transmission or capacity requirements, new or modified charges or shopping credits, and other changes to retail electric customer access programs.

In short, the Fixed-Rate Agreement permits FES to "pass through" increases in electrical charges *only* if a regional transmission organization ("RTO"), an electric utility, an industry reliability organization, a court, or a governmental entity or agency imposed "new or additional charges or requirements" on FES, or imposed "a change in the method or procedure for determining charges or requirements."

3. In January of 2014, the Midwest and East Coast regions of the United States (the "Region") experienced unusually cold weather. As a result, PJM Interconnection LLC ("PJM") – an RTO that coordinates the supply and transmission of electricity on a "wholesale" basis within the Region (including the states of Ohio, Illinois, Michigan, Pennsylvania, Maryland, and New Jersey) – purchased additional electricity generation capacity for the Region. PJM then passed the costs associated with these purchases to Load Serving Entities[2] ("LSEs") such as FES, which contracted with individual customers (such as Plaintiff, Class Members, as well as non-business residential customers) to supply such customers with electricity.

---

[1] NERC is an acronym for the North American Electric Reliability Corporation (NERC), which is a not-for-profit international regulatory authority whose mission is to assure the reliability and security of the bulk power system in North America.

[2] A Load Serving Entity, such as FES, is any entity that: (a) serves end-users within the PJM geographic footprint; and (b) is granted the authority or has an obligation pursuant to state or local law, regulation or franchise to sell electric energy to end-users located within the PJM footprint.

4. Nothing in the Fixed-Rate Agreement permits FES to pass through an increase in electrical charges to its customers because of an unusually cold winter.  In fact, the only weather-related provision that FES included in its Agreement was its "force majeure" clause (Agreement at ¶29), which excuses a party's non-performance due to "flood, earthquake, storm, fire, lightning."  Notably, cold weather is not mentioned.  Therefore, very cold winter weather does not provide an excuse for FES to avoid performing its obligations under the Fixed-Rate Agreement, nor does it constitute a triggering event under ¶31 of the Agreement that would allow FES to "pass through" weather-related cost increases to its customers.  Instead, FES effectively experienced an increase in the market price of electricity when cold weather caused FES's wholesale supplier to go into the marketplace to acquire additional electricity generation capacity – which is precisely the type of market fluctuation in price that FES customers protected themselves against when they enter into the fixed-price contractual arrangements reflected in the Agreement.

5. In breach of its contractual obligations, FES sent a substantively identical letter dated on or about March 12, 2014 (the "Unlawful Surcharge Letter," copy attached as Exhibit B) to each named Plaintiff and Class Member.  The Unlawful Surcharge Letter informed Class Members that FES "deemed" the increased costs that FES incurred for electrical supplies during the cold month of January 2014 to be a "Pass-Through Event" under the Fixed-Rate Agreement, and wrongfully advised Plaintiff and the Class Members that those additional charges had to be paid by the customer, rather than by FES, under the Agreement.

6. By invoicing each Plaintiff and Class Member an additional amount that FES charged for the increased market cost of procuring electricity FES had incurred due to an unusually cold January 2014, and wrongfully claiming that such additional amounts invoiced

were the result of a "Pass-Through Event," FES breached the unambiguous terms of the Fixed-Rate Agreement.

7. Plaintiff brings this class action on behalf of the named Plaintiff and all members of the proposed plaintiff Class, which consists of all FES business customers who were wrongfully billed by FES for the additional charges identified in FES's Unlawful Surcharge Letter, and who paid all or a portion of those charges. FES business customers who did not pay any part of the Unlawful Surcharges are excluded from the proposed Class.

8. Plaintiff, by this complaint, seeks declaratory and injunctive relief on behalf of itself and the Class in the form of an Order declaring and adjudicating that such so-called pass-through charges invoiced by FES are not owed to FES, and enjoining FES from taking any steps to collect the unlawful and improper charges. With respect to those Class Members (including Plaintiff Schwebel) who actually paid some or all of the wrongful pass-through charges to FES, Plaintiff also seeks, on behalf of itself and the Class, damages in the form of a full refund of any such charges actually paid to FES, together with interest to the maximum extent permitted by law, an award of Plaintiff's and the Class's attorneys' fees, and reimbursement of Plaintiff's and the Class's costs and expenses of litigation in pursuing this action.

## JURISDICTION

9. This Court has jurisdiction over all causes of action asserted herein pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d) because: (i) the Class has more than 100 members; (ii) the amount in controversy exceeds $5,000,000, exclusive of interest and costs; and (iii) there is minimal diversity between proposed Class Members and Defendants.

10. Venue is proper in this District pursuant to 28 U.S.C. §1391(a)(1) and (2). Substantial acts in furtherance of the alleged improper conduct occurred in this District.

## PARTIES

**Plaintiff**

11. Plaintiff Schwebel Baking Company ("Schwebel") is a company incorporated under the laws of Ohio and with its principal offices located in the State of Ohio. In addition to its principal offices in Ohio, Schwebel also has facilities, operations and/or offices in the States of Pennsylvania, New York, West Virginia, and Indiana. Schwebel entered into an agreement with FES, in the form of the Fixed-Rate Agreement attached hereto as Exhibit A, whereby Plaintiff agreed to purchase and pay for its electrical supplies on a fixed-rate basis for the term of its Agreement.

**Defendant**

12. Defendant, FirstEnergy Solutions Corp. ("FES"), an energy generator and supplier serving residential, commercial and industrial users of electricity in multiple states including Ohio, Illinois, Michigan, Pennsylvania, Maryland, and New Jersey. It is and was at all relevant times a for-profit Ohio corporation with its principal place of business in Akron, Ohio.

## GENERAL ALLEGATIONS

13. FES is an LSE and a member of the PJM RTO. At all relevant times, FES generated or procured its electricity within and subject to the rules of PJM, which coordinated the movement of wholesale electricity in each of the states in which FES operated. FES, either backed by its own generation or by contracting to purchase electricity from other generators, would then re-sell that electricity at the "retail" level to individual customers, including Plaintiff, Class Members and residential customers not included within the class definition.

14. FES is authorized to enter into direct contracts with businesses or individuals for the provision of electricity in the electricity deregulated (or quasi-deregulated) states of Ohio,

Illinois, Pennsylvania, Michigan, Maryland, and New Jersey.  One type of electricity supply contract that FES offers is a fixed-rate contract for its customers who wish to have the certainty (absent special circumstances) that the rate they pay for electricity from FES will not increase over the term of the contract.

15.     FES drafts the contract terms that are presented to all customers with whom they agree to supply electricity.  Accordingly, all the terms of each type of FES contract – including all the terms of its Fixed-Rate Agreement – are, for the most part, identical, and all the contract terms whose interpretation is at issue in this Complaint are identical for named Plaintiff and the Class Members.  Any unique provisions applicable to a particular customer are contained in a "Pricing Attachment."  In the case of the Fixed-Rate Agreements with Class Members at issue here, the "Pricing Attachment" includes the customer's address, delivery point(s) of the electricity supply, price, and whether the customer selected "dual billing" (separate bills from FES and the relevant electric distribution utility) or consolidated billing (where FES adds the electric distribution utility's bill to its invoice so the customer receives one bill). The provisions of the Pricing Attachment differ from customer to customer, but they are not at issue in this Complaint.  A collection of Plaintiff's Pricing Attachments is attached hereto as Exhibit C.

16.     Under every Fixed-Rate Agreement, FES is obligated to provide the agreed upon electricity supply to its customer in exchange for the customer agreeing to pay for the supply of said electricity at the specified fixed rate.  Moreover, under the Fixed-Rate Agreement, FES is required to pay for and bear the associated costs of all component elements of supplying electric energy to its customers, including "ancillary services, capacity, network transmission, losses, scheduling, unaccounted for energy, ISO [Independent System Operator]/Electric Utility administration fees, and green power requirements."  Exhibit A (Fixed-Rate Agreement), at ¶6.

17. The sole provision in the Fixed-Rate Agreement that permits FES to "pass through" any costs to the customer, such that the customer would have to pay more than the agreed upon amount set forth in the Pricing Attachment, is ¶31 of the Agreement. That provision provides as follows:

> **Effect of Regulatory Action**
>
> If any regional transmission organization [RTO] or similar entity, Electric Utility, governmental entity or agency, NERC and other industry reliability organization, or court requires a change to the terms of the Agreement, or imposes upon Supplier new or additional charges or requirements, or a change in the method or procedure for determining charges or requirements, relating to the Electricity Supply under this Agreement (any of the foregoing, a "Pass-Through Event"), Customer agrees that Supplier may pass through to Customer the additional cost to Supplier of such Pass-Through Event, under the procedure specified in Paragraph 32 below. For purposes of this Paragraph 31, changes include, without limitation, transmission or capacity requirements, new or modified charges or shopping credits, and other changes to retail electric customer access programs.

18. January 2014 was an unusually cold winter month in the Midwest and East Coast regions of the United States.

19. As a result, PJM – the RTO whose rules FES is subject to, purchased additional reserve generation for the Region, and passed the costs associated with these purchases to FES and the other LSEs who, like FES, were in the business of selling electricity at the retail level to end-user customers.

20. In response to this increase in its wholesale costs, FES sent its Unlawful Surcharge Letter in March 2014. In its Unlawful Surcharge Letter, FES told Class Members as follows:

> Thank you for selecting FirstEnergy Solutions as your electric generation supplier. As you know, January was an extremely cold month with temperatures reaching record lows, which resulted in a significant increase in energy consumption. In fact, PJM Interconnection – the regional transmission organization that coordinates reliability and the movement of wholesale electricity in our region – initiated emergency operations throughout the month of January.

> During these periods of time, PJM incurred extremely high ancillary costs to purchase additional reserve generation needed to keep the bulk electric system reliable throughout these extreme conditions.  These costs and additional charges were, in turn, invoiced by PJM to all suppliers serving customers throughout the region.
>
> Pursuant to your agreement with FirstEnergy Solutions, these additional costs and charges are deemed a "Pass-Through Event."  As a result, the electric generation costs for the month of January for your accounts served by FirstEnergy Solutions will be adjusted through a charge which will appear as a separate line item on your bill but will not change your contract price.  We anticipate the amount of the charge to be approximately 1-3 percent of your annual electric generation expenditure. . . .

See Exhibit B.

21. However, the fees for additional reserves passed from PJM to FES fell squarely within the fees that FES contracted to absorb and agreed to not pass through to its customers, and did not fall within the narrow exception for costs related to "Pass-Through Events."  Instead, the "Pass-Through Events" described in ¶31 of the Agreement relate only to "new or additional charges or requirements" imposed by an RTO, or its governmental equivalent.  Higher monthly costs incurred by FES due to PJM's need to purchase additional reserve generation arising from an unusually cold winter month – a classic example of the price of a de facto commodity increasing due to an unanticipated increase in demand and concomitant diminution of existing supply – is not a "Pass-Through Event" pursuant to ¶31 of the Agreement.  To the contrary, having FES rather than the customer absorb month-to-month variances in the cost of electricity is at the very heart of what FES is required to absorb (and at the core of the "benefit of the bargain" that FES customers sought to "lock in") under the terms of the Fixed-Rate Agreement.

22. Upon information and belief, no LSE (*i.e.*, those engaged in the same business as FES) in the states in which FES operates attempted to pass such costs along to their customers who had fixed-rate contracts, even though each LSE in these states that obtained electricity

through PJM received from PJM a higher bill for electricity for January 2014, and even though each such LSE includes a "pass-through event" clause in their fixed-rate contracts that is substantially the same to that set forth at ¶31 of FES's Fixed-Rate Agreement.

23. FES breached the terms of the Fixed-Rate Agreement by sending Unlawful Surcharge Letters to Plaintiff and all Class Members, and by shifting (or seeking to shift) the higher costs FES incurred from PJM to its customers.

24. Plaintiff paid the "RTO Surcharge" for which FES subsequently billed it in July 2014, but subsequently advised FES in writing in October 2014 that Plaintiff had determined that the RTO Surcharge was improper and did not (as FES had claimed in the Unlawful Surcharge Letter) qualify as a "Pass-Through Event." In accordance with ¶¶18 and 28 of the Fixed-Rate Agreement, Plaintiff has attempted in good faith to resolve the issue of FES's unlawful pass-through surcharges (the "Unlawful Surcharges"), but has been unable to do so.

## CLASS ACTION ALLEGATIONS

25. Plaintiff brings this class action on behalf of itself and all members of the proposed plaintiff Class, which consists of all FES business customers in the Region who were wrongfully billed by FES for the Unlawful Surcharges referenced in FES's Unlawful Surcharge Letter and who paid all or a portion of the Unlawful Surcharges, and which excludes FES business customers who did not pay any part of the Unlawful Surcharges.

26. Plaintiff, by this complaint, seeks declaratory and injunctive relief on behalf of itself and the Class in the form of an Order declaring and adjudicating that such so-called pass-through charges invoiced by FES are not owed to FES, and enjoining FES from taking any steps to collect any unpaid portion of the Unlawful Surcharges (or assessing or collecting any related

late fees, penalties, interest charges or other additional fees relating to any non-payment or delayed payment of the Unlawful Surcharges).

27. Plaintiff also seeks, on behalf of itself and the Class, damages in the form of a full refund of all payments of the Unlawful Surcharges paid to FES, together with interest to the maximum extent permitted by law, an award of Plaintiff's and the Class's attorneys' fees, and reimbursement of Plaintiff's and the Class's costs and expenses of litigation in pursuing this action.

25. Plaintiff does not know the exact size of the proposed Class, or the identities of all the members, since such information is in the exclusive control of Defendant FES. On information and belief, however, Plaintiff states that the proposed Class includes hundreds to thousands of businesses. Therefore, the proposed Class Members are sufficiently numerous that joinder of all members is impracticable.

28. All members of the Class have been subject to and affected by the identical practices and policies described herein. There are questions of law and fact common to all Class Members, which predominate over any questions affecting only individual members of the Class. Those questions include, but are not limited to, the following:

    a. whether ¶31 of the Fixed-Rate Agreement (Exhibit A), which was drafted by Defendant FES, precludes FES from invoicing or otherwise passing through to its fixed-rate business customers the Unlawful Surcharges;

    b. whether such invoicing breached the Fixed-Rate Agreement;

    c. whether Plaintiff and the Class are entitled to: (i) declaratory relief declaring that FES's Unlawful Surcharges, imposed on its fixed-rate business customers based upon its Unlawful Surcharge Letter, breached the Fixed-Rate Agreement with those customers;

and (ii) injunctive relief to prevent FES from taking any steps to collect any unpaid portion of the Unlawful Surcharges (including any related late fees, penalties, interest charges or other additional fees relating to any non-payment or delayed payment of the Unlawful Surcharges);

      d.      whether Plaintiff and the Class are entitled to damages, and, if so, what the appropriate measure of damages is and whether (and to what extent) such Class Members are entitled to interest; and

      e.      whether Plaintiff and the Class are entitled to an award of attorneys' fees and/or reimbursement of their costs and expenses of this litigation.

29. The claims of the named Plaintiff are typical of the claims of the Class and do not conflict with the interests of any other members of the Class in that both Plaintiff and the other members of the Class were subject to the same wrongful practice and conduct by Defendant FES, which conduct and practice constituted a breach of Defendant FES's contractual obligations owed to its customers.

30. The named Plaintiff will fairly and adequately represent the interests of the proposed Class. It is committed to the vigorous prosecution of the Class's claims and has retained attorneys who are qualified to pursue this litigation and have particular experience in commercial class action litigation.

31. The prosecution of separate actions by individual members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members of the Class who are not parties to the action, or could substantially impair or impede their ability to protect their interests.

32. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the

Class which would establish incompatible standards of conduct for the parties opposing the Class. Such incompatible standards and inconsistent or varying adjudications, on what would necessarily be the same essential facts, proof and legal theories, would also create and allow to exist inconsistent and incompatible rights within the Class.

33. Defendant FES has acted or refused to act on grounds generally applicable to the Class, making final declaratory or injunctive relief appropriate.

34. The questions of law and fact common to members of the Class predominate over any questions affecting only individual Class Members.

35. Notice to the proposed Class can be achieved consistent with the requirements of due process through the U.S. mail to the addresses of the Class Members, which are maintained by Defendant. Individual notice can also be supplemented via publication notice.

36. A class action is superior to other available methods for the fair and efficient adjudication of the controversies herein in that:

    a. pursuit of individual claims by most Class Members is likely impractical, as the costs of pursuing separate claims in separate actions will likely far exceed what any given individual Class Member has at stake;

    b. as a result, individual members of the Class have little interest in prosecuting and controlling separate actions;

    c. it is desirable to concentrate litigation of the claims herein in this forum; and

    d. the proposed class action is manageable.

## CAUSES OF ACTION

### COUNT ONE
### Declaratory Judgment

37. Plaintiff incorporates by reference the allegations contained in each of the preceding paragraphs as if fully set forth herein.

38. There exists between Plaintiff and the Class Members on the one hand, and Defendant FES on the other hand, a controversy over the interpretation of the Fixed-Rate Agreement regarding whether additional costs that FES may have incurred due to an unusually cold January 2014 (as referenced in FES's Unlawful Surcharge Letter) constituted "Pass-Through Events" whose costs could be properly passed through to Plaintiff and the Class Members under ¶31 of that Agreement.

39. Plaintiff and the members of the Class are entitled to declaratory relief pursuant to 28 U.S.C. §2201 declaring that the Fixed-Rate Agreement does not allow FES to "pass through" the PJM charges that FES incurred due to an unusually cold January 2014, and further declaring FES's invoices to Class Member customers for these Unlawful Surcharges (including any related late fees, penalties, interest charges or other additional fees relating to any non-payment or delayed payment of the Unlawful Surcharges) are null and void. Plaintiff and the members of the Class are further entitled to injunctive relief to enforce that declaration by barring Defendant FES from seeking to collect any such unpaid charges.

### COUNT TWO
### Breach of Contract

40. Plaintiff incorporates by reference the allegations contained in each of the preceding paragraphs as if fully set forth herein.

41. By seeking to impose on Plaintiff and members of the Class the costs that FES incurred as a result of an unusually cold January 2014, and that FES thereafter charged to Plaintiff and the Class Members as Unlawful Surcharges pursuant to the purported authority of the "Pass-Through Event" provision of ¶31 of the Fixed-Rate Agreement, Defendant FES breached its contractual obligations to Plaintiff and the members of the Class.

42. Plaintiff and all members of the Class who have paid some or all of the Unlawful Surcharges that have been unlawfully billed to them have suffered damages as a result of Defendant FES's breach of the Fixed-Rate Agreement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant FES as follows:

a. Certification of the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, certifying Plaintiff Schwebel as the representative of the Class, and designating its undersigned counsel as Class Counsel for the Class;

b. A declaration that Defendant FES has breached the Fixed-Rate Agreement;

c. An injunction to prevent Defendant FES from taking any steps to enforce payment of its Unlawful Surcharges (including any related late fees, penalties, interest charges or other additional fees relating to any non-payment or delayed payment of the Unlawful Surcharges) by Plaintiff or any Class Members.

d. An award of damages for breach of contract, in an amount to be determined at trial, for all "pass through" charges (including any related late fees, penalties, interest charges or other additional fees relating to any non-payment or delayed payment of the Unlawful Surcharges) improperly billed to, and subsequently paid by, Plaintiff and the members of the Class, together with interest thereon to the maximum extent permitted by law;

e.  Ordering Defendant FES to disgorge all payments and profits it wrongfully obtained at the expense of Plaintiff and the Class in connection with Defendant's breach of contract.

f.  Ordering Defendant FES to pay Plaintiff's and the Class's costs and litigation expenses of this action, including reasonable attorneys' fees and expenses; and

g.  Such other and/or further legal or equitable relief that this Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Dated:  May 8, 2017.                    Respectfully submitted,


*/s/ Peter Turner*_____
Peter Turner (0028444)
Carolyn Blake (0086279)
MEYERS, ROMAN, FRIEDBERG & LEWIS
28601 Chagrin Blvd, Suite 500
Cleveland, OH  44122
Tel:    (216) 831-0042
Fax:    (216) 831-0542
pturner@meyersroman.com
cblake@meyersroman.com

SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
Judith S. Scolnick
William C. Fredericks
The Helmsley Building
230 Park Ave., 17th Floor
New York, NY 10169

Tel: (212) 223-6444
Fax: (212) 223-6334
jscolnick@scott-scott.com
wfredericks@scott-scott.com

-and-

Geoffrey M. Johnson (0073084)
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
12434 Cedar Road, Suite 12
Cleveland Heights, OH 44106
Tel: (216) 229-6088
Fax: (860) 537-4432
gjohnson@scott-scott.com

*Counsel for Plaintiff and the Proposed Class*