PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SCHWEBEL BAKING COMPANY, *etc.*, | ) | |
| | ) | CASE NO. 4:17CV0974 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| FIRSTENERGY SOLUTIONS CORP., | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | [Resolving ECF Nos. 13 and 15] |

Pending is Defendant's Motion to Dismiss the Complaint for Failure to State a Claim Upon Which Relief Can be Granted (ECF No. 13). Also pending is Defendant's Motion to Strike the Class Allegations in the Complaint Pursuant to Fed. R. Civ. P. 23(d)(1)(D) (ECF No. 15). The Court has been advised, having reviewed the record, the parties' briefs, and the applicable law. The Court has also considered the oral arguments of counsel offered during the Telephonic Case Management Conference. For the reasons set forth in Section II below, the Court denies ECF No. 13. For the reasons set forth in Section III below, the Court also denies ECF No. 15.

**I. Background**

In May 2017, Plaintiff Schwebel Baking Company filed this putative class action alleging Defendant FirstEnergy Solutions Corp. has charged Plaintiff and all Class Members surcharges that Defendant is trying to collect from them to cover its extra expenses stemming from the extremely cold month of January 2014 due to so-called "polar vortex" conditions in Ohio,

(4:17CV0974)

Illinois, Michigan, Pennsylvania, Maryland, and New Jersey. Complaint (ECF No. 1).[1] Plaintiff seeks declaratory and injunctive relief and damages against Defendant for breach of contract. Plaintiff also seeks the same relief on behalf of a class of thousands of similarly situated business customers of Defendant that, like Plaintiff, also purchased energy from FirstEnergy Solutions pursuant to a fixed-price electricity supply contract substantially in the form attached as Exhibit A to the Complaint (ECF No. 1-1). Defendant is a member of the PJM Interconnection LLC ("PJM") Regional Transmission Organization ("RTO").

Under each customer's substantively identical Fixed-Rate Agreement (*see* form of Customer Supply Agreement (ECF No. 1-1)), Defendant agreed to supply Plaintiff and each given Class Member with electricity during the contract period at an agreed-upon and fixed-rate per kilowatt-hour. Paragraph 6 of the Customer Supply Agreement between Plaintiff and Defendant, dated September 16, 2009 (the "Agreement") (ECF No. 13-2) confirmed that

> [s]upplier shall . . . be responsible for the transmission and other costs or charges, as described below, imposed on or associated with the delivery of the electricity to the Delivery Point, . . . [which] may include electric energy, ancillary services, capacity, network transmission, losses, scheduling, unaccounted for energy, ISO/Electric Utility administration fees, and green power requirements.

---

[1] Under the Class Action Fairness Act, a district court has original jurisdiction over an action where (1) the amount in controversy exceeds $5 million, (2) any plaintiff is a citizen of a state different from any defendant, and (3) the proposed plaintiff class (or classes) contain(s) at least 100 members in the aggregate. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B). Counsel stated during the Telephonic Case Management Conference that the amount in controversy is more than $10 million. Defendant admits the allegations regarding the Court's jurisdiction in paragraph 9 of the Complaint (ECF No. 1), but denies that the alleged class can be certified under Fed. R. Civ. P. 23. Answer (ECF No. 14) at PageID #: 183, ¶ 9.

2

(4:17CV0974)

[ECF No. 13-2 at PageID #: 119](#). Paragraph 18 required customers not to pay disputed charges, and instead to enter into good-faith discussions to clear up any confusion or disagreement.

> 18. In the event any portion of any invoice is in dispute, the Customer shall pay the undisputed amount and Parties in good faith shall attempt to resolve the dispute. If the dispute is not resolved, each Party may pursue any and all remedies available to it. Upon determination of the correct invoice amount, the proper adjustment shall be applied to a subsequent invoice or paid/refunded within thirty (30) days of the resolution.

[ECF No. 13-2 at PageID #: 120](#). Paragraph 28 of the Agreement provides:

> **DISPUTE RESOLUTION**
>
> 28. If a dispute between Customer and Supplier arises during the course of this Agreement, the Parties will attempt to resolve the dispute in writing and verbally, in good faith.

[ECF No. 13-2 at PageID #: 121](#).[2] In Paragraph 31, the parties agreed that "additional charges" "relating to the Electricity Supply under this Agreement" could be properly passed through and charged to Plaintiff as an "additional cost to Supplier of such Pass-Through Event."

> **EFFECT OF REGULATORY ACTION**
>
> 31. If any regional transmission organization [RTO] or similar entity, Electric Utility, governmental entity or agency, NERC[3] and other industry reliability organization, or court requires a change to the terms of the Agreement, or imposes upon Supplier [*i.e.*, Defendant] new or additional charges or requirements, or a change in the method or procedure for determining charges or requirements, relating to the Electricity Supply under this Agreement (any of the foregoing, a

---

[2] The form of Customer Supply Agreement ([ECF No. 1-1](#)) includes "within thirty (30) days" cutoff.

[3] NERC is an acronym for the North American Electric Reliability Corporation, which is the nation's "electric reliability organization." NERC has developed enforceable standards to ensure electric grid reliability. *[Del. Dept. of Natural Res. & Envtl. Control v. EPA](#)*, 785 F.3d 1, 11 (D.C. Cir. 2015).

3

> "Pass-Through Event"), Customer [*i.e.*, Plaintiff] agrees that Supplier may pass through to Customer the additional cost to Supplier of such Pass-Through Event, under the procedure specified in Paragraph 32 below. For purposes of this Paragraph 31, changes include, without limitation, transmission or capacity requirements[,] new or modified charges or shopping credits, and other changes to retail electric customer access programs.

ECF No. 13-2 at PageID #: 121. In short, the "Regulatory Action" section of the Agreement permitted Defendant FES to "pass through" increased costs only if a RTO, electric utility, governmental entity or agency, industry reliability organization, or court imposed "new or additional charges or requirements" on Defendant, or imposed "a change in the method or procedure for determining charges or requirements" that "relat[ed] to the Electricity Supply under this Agreement."

In March 2014, Defendant sent a letter to Plaintiff and all Class Members (*see* form of letter (ECF No. 1-2)). In the March 13, 2014 letter to Plaintiff (ECF No. 13-3 at PageID #: 127), Defendant stated:

> . . . As you know, January was an extremely cold month with temperatures reaching record lows, which resulted in a significant increase in energy consumption. In fact, PJM Interconnection — the regional transmission organization that coordinates reliability and the movement of wholesale electricity in our region — initiated emergency operations throughout the month of January.
>
> During these periods of time, *PJM incurred extremely high ancillary costs to purchase additional reserve generation needed to keep the bulk electric system reliable* throughout these extreme conditions. These costs and additional charges were, in turn, invoiced by PJM to all suppliers serving customers throughout the region.
>
> Pursuant to your agreement with FirstEnergy Solutions, these additional costs and charges *are deemed* a "Pass-Through Event." As a result, the electric generation costs for the month of January for your accounts served by FirstEnergy Solutions will be adjusted through a charge which will appear as a separate line item on

(4:17CV0974)

> your bill but will not change your contract price. . . . The charge appearing in
> your bill will be based upon your actual usage for the month of January.
>
> \* \* \*
>
> If you have any questions or concerns regarding your charges or this notice, please
> feel free to visit our website at www.fes.com/RTOexpenseCI. . . .

ECF No. 13-3 at PageID #: 127 (emphasis added). On two occasions in the following month, Plaintiff signed two new term sheets extending its electricity supply contract with Defendant. *See* ECF Nos. 13-4 and 13-5.

After receiving Defendant's letter in March 2014, Plaintiff was invoiced for the "pass-through" charges at issue. The charge was separately itemized and identified in its own section of each invoice as "RTO Expense Surcharge." *See* ECF No. 13-6. On each invoice, Defendant again invited Plaintiff to resolve any questions it might have about the Pass-Through cost before paying it: "For more information about the RTO Expense Surcharge, small business customers should visit www.fes.com/RTOexpense. Commercial and Industrial customers should visit www.fes.com/RTOexpenseCI." In July 2014, Plaintiff paid its invoice with the one-time charge as soon as it was due, without any protest. ECF No. 1 at PageID #: 10, ¶ 24.

In October 2014, Plaintiff advised Defendant in writing that Schwebel had determined that the RTO Expense Surcharge was improper and did not qualify as a "Pass-Through Event." In accordance with ¶¶ 18 and 28 of the Agreement (ECF No. 13-2), Plaintiff attempted in good faith to resolve the dispute, but has been unable to do so. ECF No. 1 at PageID #: 10, ¶ 24. By filing the case at bar, Plaintiff now seeks to recover all improperly charged amounts previously

(4:17CV0974)

paid by Schwebel and all Class Members, as well as a declaration that Defendant's imposition of such charges on Plaintiff and the Class Members was improper.

## II. Motion to Dismiss (ECF No. 13)

### A. Standard of Review

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must take all well-pleaded allegations in the complaint as true and construe those allegations in a light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in th[e] complaint." *Twombly*, 550 U.S. at 564. A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 677-78 (quoting Fed. R. Civ. P. 8(a)(2)). Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. It must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Twombly*, 550 U.S. at 556. Where a complaint pleads facts that are "merely

(4:17CV0974)

consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. at 557 (brackets omitted). "[When] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Rule 8(a)(2)). The Court "need not accept as true a legal conclusion couched as a factual allegation or an unwarranted factual inference." Handy-Clay v. City of Memphis, Tenn., 695 F.3d 531, 539 (6th Cir. 2012) (citations and internal quotation marks omitted).

When parties offer alternative constructions of a contract, dismissal is only proper if the interpretation of the party seeking dismissal is the only reasonable construction under the applicable law. Neely v. Crown Solutions Co., LLC, No. 3:13-cv-00109, 2013 WL 6056205, at *11 (S.D. Ohio Nov. 15, 2013) (citation omitted). "A court should not choose between reasonable interpretations of ambiguous contract provisions when considering a motion to dismiss under Rule 12(b)(6)." More Than Gourmet, Inc. v. Christian Potier, S.A., No. 5:13CV1966, 2014WL 4245961, at *6 (N.D. Ohio Aug. 26, 2014) (Lioi, J) (quoting Ajuba Int'l, L.L.C. v. Saharia, 871 F. Supp.2d 671, 689 (E.D. Mich. 2012)).

The reviewing court may consider "exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein." Bassett v. NCAA, 528 F.3d 426, 430 (6th Cir. 2008); see also Kreipke v. Wayne State Univ., 807 F.3d 768, 782 (6th Cir. 2015) ("[W]hen a written instrument contradicts allegations [about it] in the complaint . . ., the exhibit trumps the allegations.") (quoting N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend, 163 F.3d 449, 454 (7th Cir. 1998)).

7

(4:17CV0974)

### B. Analysis

Defendant argues the "voluntary payment doctrine" applies to bar all of Plaintiff's claims as a matter of law. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009) (dismissal may be granted "where the undisputed facts *conclusively establish* an affirmative defense as a matter of law") (emphasis added). The voluntary payment doctrine is an affirmative defense and the most common formulation of the doctrine is as follows: "In the absence of fraud, duress, compulsion or mistake of fact, money, voluntarily paid by one person to another on a claim of right to such payment, cannot be recovered merely because the person who made the payment mistook the law as to his liability to pay." *Wears Kahn McMenamy & Co. v. JPMorgan Chase Bank, N.A.*, No. 2:12-cv-812, 2013 WL 1689030, at *4 (S.D. Ohio April 18, 2013) (quoting *State ex rel. Dickman v. Defenbacher,* 151 Ohio St. 391, 395 (1949)).

This is not a case in which the relevant facts concern only the actions of the two contracting parties to the Agreement (ECF No. 13-2). Plaintiff contends it and the Class Members did not have full knowledge of the facts relating to the "pass-through" charges at issue, which had originally been incurred by PJM, the regional transmission organization, and then "passed on" by Defendant to Plaintiff. *Wears*, 2013 WL 1689030, at *4 (it is only "a person who voluntarily pays another with *full knowledge* of the facts" who forfeits his day in court under the doctrine) (emphasis in original). Plaintiff also maintains the March 13, 2014 letter from Defendant (ECF No. 13-3 at PageID #: 127) misleadingly represented to Schwebel and the Class Members that all of the charges "[we]re deemed" payable pursuant to the Agreement (ECF No. 13-2) when, in fact, no authority or third-party had so "deemed" them. *See, e.g.*, *Nava v. Sears,*

8

*Roebuck & Co.*, 995 N.E.2d 303, 311 (Ill. App. Ct. 2013) (voluntary payment doctrine applies "absent fraud, *misrepresentation* or mistake of fact") (emphasis added).[4] According to Plaintiff, there was no authority, let alone specific language, in the Agreement that "deemed" that costs incurred by an RTO, such as PJM, "to purchase additional reserve generation needed to keep the bulk electric system reliable throughout [extreme weather conditions]" (ECF No. 13-3 at PageID #: 127) could be passed through to Defendant's fixed-rate customers as a "Pass-Through Event."

The Court concludes that only through discovery will Plaintiff, on behalf of itself and the class, be able to determine whether, based on full knowledge of the underlying facts, all of the PJM-incurred charges qualified as "pass-through events" that Defendant could pass on to its business customers without breaching the Customer Supply Agreements (ECF Nos. 13-2 and 1-1. Dismissal of this case is not appropriate because Defendant has not shown as a matter of law at this time that Plaintiff or other Class Members had anywhere near the kind of "full knowledge" of the underlying facts that is a prerequisite to its ability to "conclusively establish," *Hensley Mfg.*, 579 F.3d at 613, a voluntary payment affirmative defense. As in *Arlington Video Prods., Inc. v. Fifth Third Bancorp*, No. 2:08-cv-122, 2008 WL 1990355 (S.D. Ohio May 1, 2008),

> it would be premature, at this stage, to conclude that Plaintiff voluntarily made the payments at issue to Defendant with full knowledge of the facts. *See Alexian Brothers Health Providers Assoc., Inc. v. Humana Health Plan, Inc.*, 277 F. Supp.2d 880, 892 (N.D.Ill. 2003) (denying motion to dismiss a claim after observing that "incomplete knowledge of facts can contribute to the mistake of fact exception to the voluntary payment doctrine"). While Defendant may ultimately be able to establish a viable defense to Plaintiff's claims through the

---

[4] Plaintiff does not allege fraud in the Complaint (ECF No. 1).

9

(4:17CV0974)

> voluntary payment doctrine, it is premature to dismiss Plaintiff's claims pending further factual development of the record.

*Id.* at *6. Plaintiff has alleged mistake of fact and that the March 13, 2014 letter from Defendant (ECF No. 13-3 at PageID #: 127) misleadingly represented to Schwebel that all of the charges "[we]re deemed" payable pursuant to the Agreement (ECF No. 13-2), and it remains to be seen whether it can prove any of these bases for circumventing the voluntary payment argument made by Defendant.

### III. Motion to Strike the Class Allegations (ECF No. 15)

Defendant also moves the Court to strike from the Complaint (ECF No. 1) the allegations relating to representation of absent persons because the allegations themselves show that no class action can be sustained when no putative class will present common issues for adjudication that predominate over individual ones.

"Motions to strike class allegations are a facial attack on a proposed class. This procedural posture is distinct from that of a motion to certify a class where the Court has at its disposal the facts generated by class discovery." *Sherrod v. Enigma Software Group USA, LLC*, No. 2:13-cv-36, 2016 WL 25979, at *2 (S.D. Ohio Jan. 4, 2016). Courts disfavor the practice of striking class allegations before the class-discovery stage. *See, e.g.*, *Geary v. Green Tree Servicing, LLC*, No. 2:14-CV-00522, 2015 WL 1286347, at *17 (S.D. Ohio March 20, 2015) ("Without further insight into the facts, the Court lacks the foundation to conduct the 'rigorous analysis' required by Rule 23 and determine the appropriateness of class certification."). While a decision that a case is not appropriate for class treatment can be made prior to discovery, a Court

(4:17CV0974)

may rule only when "no proffered or potential factual development offers any hope of altering that conclusion." *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011).

Given the decision on Defendant's Motion to Dismiss (ECF No. 13), the Court defers a decision on the issue of whether the class allegations should be stricken pending further factual development of the record relevant to class issues. *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1086 (6th Cir. 1996) (courts should defer this decision until after class discovery if "the existing record is inadequate for resolving the relevant issues").

### IV. Conclusion

For the reasons set forth above,

Defendant's Motion to Dismiss the Complaint for Failure to State a Claim Upon Which Relief Can be Granted (ECF No. 13) is denied and

Defendant's Motion to Strike the Class Allegations in the Complaint Pursuant to Fed. R. Civ. P. 23(d)(1)(D) (ECF No. 15) is denied.

IT IS SO ORDERED.

| | |
|---|---|
| March 21, 2018 | */s/ Benita Y. Pearson* |
| Date | Benita Y. Pearson |
| | United States District Judge |